### KRUEGER, Plaintiff-Appellant, v SCHOENLING BREWING Co., Defendant-Appellee.

Ohio Appeals, First District, Hamilton County.

No. 6896. Decided February 4, 1948.

Walter K. Sibbald, Cincinnati, for plaintiff-appellant.

Messrs. Kane, Kennedy, Brant & Morris, Cincinnati, and Messrs. Kyte, Conlan & Heekin, Cincinnati, for defendant-appellee.

## OPINION

By ROSS, J.:

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, Ohio. The case was tried to a jury, which rendered a verdict in favor of the plaintiff in the sum of $15,000.00. The Court, however, sustained a motion of the defendant for judgment, notwithstanding the verdict, and judgment was rendered accordingly.

The question presented to this Court is, whether upon the statements in the pleadings or upon the evidence received upon trial the defendant is entitled by law to judgment in his favor. (Sec. 11,601 GC.)

The weight of the evidence is not involved.

It is a question whether reasonable minds would differ upon the conclusions properly inferable from the pleadings or evidence. **Wilkeson, Admr., v Erskine & Son, Inc., 145 Oh St, 218.** The plaintiff is entitled to the benefit of the rule requiring the most favorable construction of all the evidence in his favor.

The action was instituted to recover damages for breach of an oral contract. The answer constituted a general denial.

In the petition, the plaintiff alleges that the defendant was engaged in the manufacture of beer and that in May, 1934, the oral contract, upon which the action is based, was entered into by the parties.

The plaintiff claims that by such contract it was stipulated that the plaintiff should "solicit and establish retail sellers of beer as customers of the defendant" and "the defendant agreed that so long as the customers so established by plaintiff were satisfied to deal with the defendant through plaintiff and so long as defendant sold beer to said customers defendant would pay to plaintiff a commission on all such sales."

Plaintiff further alleges that at first defendant paid plaintiff a commission of $1.00 per barrel and later increased such commission to $1.40 per barrel, and that a commission on cases of bottled beer of 15c per case was later reduced to 7½c per case. Plaintiff claims that his commissions under the arrangement with defendant amounted to $150.00 per month, and that "the defendant breached said contract by refusing to pay plaintiff the commissions due him", that the defendant has continued and will continue to furnish his customers beer "but now refuses and in the future will refuse to pay plaintiff his commissions on such sales."

The plaintiff alleges full performance on his part and readiness and willingness to perform and claims damages in the sum of $50,000.00.

Evidence was introduced sustaining substantially the allegations of the petition.

The question thus presented is purely one of law, whether what occurred between the parties constituted an enforceable contract, for the breach of which plaintiff was entitled to compensation.

In fairness to plaintiff it should be stated there was evidence that after the plaintiff began the sale of beer in May, 1934, he was successful in securing many customers for defendant's beer, and that the plaintiff spent considerable sums of money in building up this business, that later there was some dissatisfaction among defendant's customers with the quality of the beer and that for this reason the commissions on barrel beer was increased.

Some two years later, however, the commission on bottle beer was decreased as alleged. There is also evidence that in 1945, when the commissions of plaintiff were mounting, that defendant sought to induce plaintiff to continue his employment on a salary basis, and that upon his refusal to accept such employment, the defendant found fault with plaintiff and ultimately refused to continue payment of commissions.

The implications of the plaintiff's position are evident. It is his contention that the defendant has bound itself to pay him commission on all beer sold to customers, wherever he was instrumental in securing original purchasers of defendant's beer, and that as long as the defendant continues to furnish such customers with beer, the defendant is bound to pay him the commission which he was receiving when the relationship of employer and employee was terminated.

This is the plaintiff's contention, regardless of the fact that he need exert himself no further after the original effort, that the cost of production might increase greatly, that the defendant might have to expend large sums in retaining such customers secured by plaintiff, and in keeping them satisfied, that plaintiff might have secured an original order from a customer for a small amount of beer, who, through the efforts of the defendant and other salesmen many years later, might be induced to purchase large quantities, and that such a situation would continue as long as plaintiff lived and the original customers saw fit to patronize the defendant.

It is not the function of a court to protect a party to a contract against the consequences ensuing therefrom merely

because the action of the party entering into the agreement may later develop an improvident situation as far as he is concerned, if both parties dealt at arms' length and no fraud or misrepresentation intervened. On the other hand, inequality of obligation may be considered in construing the terms of an agreement and whether the language used by the parties was understood as conferring upon one a grossly unequal advantage. The conduct of the parties operating under such an agreement also may be considered as indicating what was mutually understood to constitute the contract between them. **Courtright v Scrimger, et al., 110 Oh St, 547.**

It appears from the evidence of plaintiff that in the beginning the plaintiff and the president, who was also general manager of the defendant, were friends. That plaintiff applied to him for a job. That he was told that the defendant was already fully supplied with salesmen and plaintiff was finally employed on a commission basis, after being refused other employment. In the beginning, the plaintiff was one of three salesmen who contributed to the building up of the defendant's business. Even the evidence of plaintiff does not justify the conclusion that plaintiff was solely responsible for the success of the business of defendant.

It was the opinion of the trial court that such a contract as is here claimed by plaintiff to exist, carrying a life time obligation to the plaintiff, could not be sustained as binding upon the defendant corporation in the absence of some act of authorization or ratification on the part of the directors of the Company. The plaintiff claims that the long course of dealing between the parties showed knowledge of the directors, and, hence, implied ratification. It is not necessary to predicate the conclusion of this court upon the basis of lack of authority in the president and general manager or failure to show a ratification.

The terms of the agreement could not have been understood by either party as constituting a life time obligation on the company. It is obvious that the parties contemplated the current course of business and that neither had in mind a situation where the plaintiff would sever his connection with the defendant as a salesman and employee, and still be entitled to commissions on the sales of beer to his original customers for the rest of his life. The initiating incidents of the relationship—the continued efforts of plaintiff until discharged, the changes in the amount of commissions, the inequality in obligation of the parties, all indicate that an implication was involved in the agreement that the payment of commissions was dependent upon the continued employ-

ment of plaintiff by defendant and that the relationship of employer and employee could be terminated by either party at will.

In **9 O. Jur.,** **"Contracts"**, **section 194, pages 422 and 423,** will be found statements supporting the view herein expressed. In the text it is stated, quoting from **Ohio Crane Co. v Hicks, 110 Oh St, 168:**

"We recognize the fact that where a contract is plain and unambiguous, it does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto and a corresponding advantage to the other, that it is not the province of courts to relieve parties of improvident contracts, but that, where a contract is equally subject to several interpretations, one of which presupposes rational action upon the part of all parties thereto and the other irrational action upon the part of one of the parties thereto, courts in seeking to determine the intention of the parties will assume that the parties entering into the contract were each exercising reason, and give to the contract such reasonable construction as it will bear."

See, also: Section 195, Id.

In reaching the conclusion that the parties intended to limit the payments of commissions to the period covered by employment relationship, it is not intended to hold that the contract was unreasonable and, therefore, unenforceable, but, on the contrary, that it is unreasonable to believe, taking into consideration all the admitted facts that the parties at the time they entered into the agreement intended to require the payment of commissions during the life of plaintiff. If such eventuality was not considered by either party or in fact by both parties, there was no meeting of the minds upon this provision and the plaintiff cannot enforce an obligation which was not considered by the parties and assumed by the defendant. There is nothing in the evidence to suggest that such a life time obligation was considered by either party. The evidence on the contrary sustains the conclusions that the plaintiff was to receive commissions on beer purchased by customers as long as he remained a part of this organization manufacturing and selling beer.

It is claimed by plaintiff that this agreement as construed by him is not a life time contract. If the defendant must pay the plaintiff commissions on beer sold customers

originally secured by him as long as they continue to purchase beer, it would seem only one eventuality could terminate this obligation, and that the death of plaintiff.

Of course, the defendant could refuse to sell such customers or they could cease purchasing defendant's beer—but this does not affect the situation where the defendant does sell and the customers continue to purchase.

It is the evident position of the plaintiff that as far as he is concerned, his full obligation has been performed when he secures a customer who continues to purchase beer.

The lack of mutuality in extent of obligation is apparent. If the defendant uses its facilities to continue patronage of the customers, all during the life of plaintiff, all its exertion and expenses merely tend to fix its continued obligation to the plaintiff without further effort on his part. Is it conceivable that the defendant or even the plaintiff at the time the relationship of employer and employee was established, contemplated any such one-sided arrangement? It is certainly unreasonable to so suppose.

Plaintiff relies upon **Fuchs v United Motor Stage Co., Inc., 135 Oh St, 509.** This case involves what is commonly known as a "requirement contract." The obligation of the defendant was there to sell what was required. A consideration existed for such obligation. The plaintiff was obligated to pay for the merchandise he bought. The inapplicability of the rules considered and announced in the Fuchs case to the instant situation would seem apparent without further comment.

The undisputed facts sustain the conclusion of the trial court.

The construction of the contract advanced by plaintiff requires a determination by the court that the parties entered into an agreement lacking mutuality, indefinite in terms, and requiring the assumption of an obligation by defendant wholly unreasonable in scope.

The judgment of the Court of Common Pleas of Hamilton County is affirmed.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.