WEIPER, Appellant,

v.

W.A. HILL & ASSOCIATES, Appellee.

[Cite as *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930871.

Decided May 31, 1995.

*Freking & Betz, Randolph H. Freking* and *Susan Santen,* for appellant.

*Klaine, Wiley, Hoffman & Meurer, Franklin A. Klaine, Jr.* and *Joyce Ann Campbell,* for appellee.

GORMAN, Judge.

The plaintiff-appellant, Jerry Weiper, appeals from the trial court's order granting summary judgment in favor of his employer, W.A. Hill & Associates ("W.A. Hill"), on his claims for breach of contract and age discrimination. In the first of his two assignments of error, Weiper contends that the trial court erred by failing to recognize triable issues of fact precluding summary judgment. Specifically, Weiper contends that the record demonstrates issues of material fact with respect to (1) an express or implied contract for commissions after his termination of employment, (2) promissory estoppel, (3) unjust enrichment, and (4) age discrimination.[1] In his second assignment of error, Weiper contends that the trial court incorrectly applied the Statute of Frauds to his contract claims.

---

1. Although Weiper asserted a claim of defamation below, he has apparently abandoned this claim on appeal since he does not raise it in his appellate brief.

Although we agree with Weiper's assertion that the trial court's ruling on the Statute of Frauds was erroneous, that error cannot be held prejudicial in light of our rejection of the claims raised in the first assignment of error, and we accordingly affirm the trial court's judgment.

## FACTS AND PROCEEDINGS

In 1986 W.A. Hill, an employment agency, hired Weiper as an account manager. Weiper's job was to place professional personnel into temporary contract positions or permanent employment with W.A. Hill's business clients, as well as generate new clients. The parties agreed orally that W.A. Hill would pay Weiper the following commissions: (1) twenty-five percent if either the candidate for the position or the company where the candidate was placed was Weiper's client; (2) an additional twenty-five percent if both were Weiper's clients; (3) twenty-five percent of the difference between W.A. Hill's fee and a temporary contract candidate's wages if either the temporary contract candidate or the company was Weiper's client; and (4) an additional twenty-five percent of the difference between W.A. Hill's fee and a temporary contract candidate's wages if both were Weiper's clients.

The record demonstrates that at the time W.A. Hill hired Weiper, the parties did not discuss, in specific detail, grounds or procedures for termination of employment or whether Weiper was to continue to receive commissions after he left W.A. Hill's employment. Although Weiper had no previous experience as an account manager, he became W.A. Hill's best income producer, earning commissions of $95,364.80 in 1990 and $73,521.07 in 1991. He stated in his deposition that he was told several times, "I was doing a good job, and, you know, he [W.A. Hill, president of the company] could see me making a lot of money for his company for a long time to come."

Although no mention appears in the parties' correspondence, in his deposition Weiper stated that in 1991 Hill told him that the company might return to a one-man operation. Aware of an instance in which Hill did not pay an employee commissions after he left the company, Weiper presented W.A. Hill a proposed employment contract in writing. It included a provision requiring the company, if he left its employment "for any reason," to pay him commissions continuously for work performed, or to his estate in the event of his death. Hill informed Weiper that the company would not consider the proposed agreement.

After this discussion, Weiper exhibited fits of temper in the office, refused to share work with other account managers, and was reluctant to take direction from Hill. Weiper acknowledged that, on one occasion, his wife even checked him into a hospital overnight for stress, and on another occasion he told Hill that he did not think Hill "told the truth 100 percent of the time."

On January 29, 1992, Weiper delivered a letter to Hill setting out the employment contract he wanted. There was no reference to a just-cause provision for termination. The letter was not answered. On April 4, 1992, Weiper sent a letter by certified mail to Hill in which he stated that if the company did not respond to his proposal, he would treat the January 29, 1992 letter as the terms of their employment arrangement. By letter dated April 16, 1992, Hill rejected Weiper's proposed agreement for postemployment commissions, informing him that the company considered him an employee at will, and that, if he were to be terminated "for whatever reason, the terms of the settlement will be determined at that time." On May 2, 1992, W.A. Hill terminated Weiper, then age fifty-one, so advising its clients by a letter dated May 18, 1992. On June 28, 1992, Weiper filed this action, and, one week later, W.A. Hill hired Stephen Krentz, age forty-four, as an account manager.

## ASSIGNMENTS OF ERROR AND ISSUES

A. Motion for Summary Judgment

■■■ We recently analyzed the effect of recent decisional law upon the operation of Civ.R. 56(C) in *Johnson v. United Dairy Farmers, Inc.* (Mar. 8, 1995), Hamilton App. No. C–940240, unreported, 1995 WL 96853. We concluded that, under both the federal and Ohio rules, the party seeking summary judgment has the initial burden to identify those elements of the nonmoving party's case that do not raise genuine issues of material fact and upon which the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 801. If a moving defendant can satisfy its burden, the nonmoving plaintiff cannot simply rely on the allegations in the complaint, but has a "reciprocal burden" to demonstrate by specific factual material that a "triable issue of fact" exists. *Id.* at 115, 526 N.E.2d at 801. See, also, *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, approving and following *Celotex, supra.* Because the standard for summary judgment mirrors the standard for a directed verdict, the nonmoving plaintiff's evidentiary material must establish that the claim is more than just colorable. *Celotex, supra*, at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273–274. Whether there are genuine issues of material fact depends on whether the evidentiary material raises "a sufficient disagreement to require submission to a jury," or whether conversely it is so "one-sided that one party must prevail as a matter of law." *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 213–214. See, also, *Nungester v. Cincinnati* (Jan. 31, 1995), Hamilton App. No. C–930771, unreport-

ed, 1995 WL 35722; *Catanzano v. Kroger Co.* (Jan. 11, 1995), Hamilton App. No. C–930761, unreported, 1995 WL 8956.

### 1.  Express and Implied Contract Claims

Weiper did not enter into a written employment agreement with W.A. Hill. Furthermore it is clear from Weiper's deposition that there were no specific discussions about termination for cause between him and W.A. Hill prior to his beginning work.  Nor, it should be pointed out, does Weiper make the claim that W.A. Hill had any employee manuals or written policies containing language which may have justified a belief that Weiper was something other than an at-will employee.

In sum, before starting out his employment with W.A. Hill, Weiper had an oral agreement for an indefinite duration, which amounts to no more than an employment-at-will agreement.  Weiper argues, however, that there is evidence of record from which one could reasonably conclude that the at-will nature of his employment was altered by subsequent statements from W.A. Hill guaranteeing him that he would always have a place with the company so long as he produced income.  We disagree.

The statements upon which Weiper relies consist, upon close examination, of general praise for his work:  words of approbation such as the head of the company stating to Weiper that he envisioned him making "a lot of money for the company for a long time to come."  Although Weiper testified that he interpreted such statements to mean that "as long as I produced revenues from the sale, that I had a job," and that it "never entered [his] mind" that W.A. Hill would want to fire someone who was making money for the company, he presented absolutely no evidence that W.A. Hill, by bestowing such praise upon him, was expressing its intent to bind the company to an employment contract of specific duration. Indeed, in his deposition Weiper admitted that he could not point to any specific promise of continued employment, nor was he was aware of any legal impediment to his being fired.

Concededly, evidence of the character of the employment, custom, the course of dealing between the parties, company policy, or other circumstances may transform an employment-at-will agreement into an implied contract for a definite term.  *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph two of the syllabus.  However, unless the terms of the agreement or the circumstances manifest the parties' *mutual* intent to bind each other, the Ohio Supreme Court has evidenced a strong presumption favoring employment at will.  *Henkel v. Educational Research Council of Am.* (1976), 45

Ohio St.2d 249, 254–255, 74 O.O.2d 415, 417–419, 344 N.E.2d 118, 121–122; *Mers, supra,* 19 Ohio St.3d at 102–103, 19 OBR at 263, 483 N.E.2d at 153, fn. 1.

The only evidentiary materials presented by Weiper to contradict the at-will nature of his employment are conclusions which he individually drew with respect to his employment based upon his own personal expectations and the meaning he gave to the company's praise for his work performance. There is no evidence of specific promises made by the company which would allow one to reasonably conclude that W.A. Hill mutually assented to anything other than an at-will employment. Weiper's failure to grasp the employment-at-will nature of his hiring, and his subjective interpretation of praise given for his work, leading to a personal but objectively unfounded sense of job security, cannot alter in law the at-will nature of his job status. We hold, therefore, that the trial court did not err in granting summary judgment to W.A. Hill on the issue of whether Weiper was an employee at will.

■ Furthermore, we find no evidence of record sufficient to create a question of material fact with respect to whether there existed an implied contract between Weiper and W.A. Hill for the payment of postemployment commissions. Weiper admitted upon deposition that he and W.A. Hill had no specific preemployment discussions about his right to commissions after his termination. Rather, similar to the situation involving the duration of his employment, Weiper testified that it was his "understanding" and his "impression" that commissions were to continue postemployment, but he could not identify any specific oral promise or words to that effect.

Weiper's subjective expectations are not sufficient to give rise to an implied contract for postemployment commissions absent some colorable evidence of W.A. Hill's assent. Clearly there is no such evidence of record. Indeed, to the extent that the record manifests the parties' intent, it is clear that W.A. Hill refused any formal agreement which would have bound it to paying such commissions. Furthermore, Weiper's efforts to get such an agreement in writing belie any assertion that there was an implied contract already in place between him and the company that entitled him to such commissions.

We reject Weiper's argument that, because the agreement by which Weiper's commissions were calculated during his employment was not expressly made conditional upon his continued employment, Weiper's entitlement to commissions must be interpreted as absolute and without temporal limits. In effect, Weiper would have an oral formula for the calculation of commissions attendant upon an at-will employment contract construed, as a matter of law, as a promise to pay commissions in perpetuity. Such a result is, we believe, untenable. While it is true, as Weiper argues, that the at-will nature of his employment did not preclude the parties from contracting for the payment of commissions beyond termination,

it is quite another thing to suggest that, absent an express provision to the contrary, every at-will employee working on commission has an absolute right to such commissions, even past the period of employment.

Neither party has cited, nor have we been able to find on our own, Ohio cases detailing when the right to commissions vests absent an express provision in the contract, and the duration of such vestiture. Generally, however, courts will consider both the employee's efforts and industry custom. *Wakefield v. N. Telecom, Inc.* (C.A.2, 1985), 769 F.2d 109, 113. Weiper has presented no evidence that it was industry custom, or the custom of W.A. Hill, to continue to pay commissions to a terminated employee. Conversely, W.A. Hill has submitted of record an affidavit indicating that it is the custom of employment agencies *not* to pay postemployment commissions. With respect to Weiper's efforts in placing a candidate, we perceive no particular reason why that effort, which is essentially complete at the time of placement, need be rewarded in perpetuity when the employee is no longer working for the employment agency. As outlined in his deposition testimony, although he initially was given a recoverable draw, Weiper ultimately worked on a one-hundred-percent commission basis. In essence, the formula for commissions was a means of calculating his compensation based on the income he generated for the company while in its employ. Once Weiper's employment was over, even though the candidates he had placed may have been still in their positions and generating income for the company, we can discern no reason why, in the absence of an express agreement, Weiper should be entitled to share in that income as a former employee. Simply because a commissioned employee through his or her efforts makes a company more profitable does not entitle that person to post-employment commissions. Such a result would be tantamount to giving the employee a perpetual equitable share of that company's earnings.

Our holding in this regard is consistent with our holding in *Krueger v. Schoenling Brewing Co.* (1948), 82 Ohio App. 57, 37 O.O. 375, 79 N.E.2d 366, in which the plaintiff argued that the defendant had made a commitment to pay him commissions on the sale of beer to customers which he had been instrumental in procuring, even after the employment relationship had been terminated, and even though the plaintiff need not have exerted himself any further after the original effort. The oral contract was silent as to whether the commissions were payable past the period of employment. This court found that, upon review of the evidence concerning the parties' relationship and its incidents, the implication was that the payment of the commissions was dependent upon the continuing employment of the plaintiff. In rejecting the plaintiff's view that the payment of commissions was not limited to the period covered by the employment relationship, we held that where there is nothing in the evidence to suggest that such a

lifetime obligation was considered by both parties, there was no meeting of the minds and it would be unreasonable to presume that the defendant would have agreed to a contract provision which would have imposed such an onerous obligation. *Id.* at 62–64, 37 O.O. at 377–378, 79 N.E.2d at 368–369.

In sum, we hold that Weiper failed to present any evidence of mutual assent relative to the payment of post-employment commissions, and therefore W.A. Hill was entitled to summary judgment on this issue.

### 2.   Promissory Estoppel

Weiper next argues that the doctrine of promissory estoppel precluded the trial court's reliance on the employment-at-will doctrine in granting summary judgment because of triable issues concerning promises he alleges W.A. Hill made to him.   Specifically, Weiper contends that a jury could have found that he was entitled to rely on statements which he alleges were made to him by the company, and which he construed as promises that he would be terminated only for "just cause" and paid postemployment commissions.

The elements of promissory estoppel are (1) a clear, unambiguous promise;  (2) reliance upon the promise by the person to whom the promise is made;  (3) the reliance is reasonable and foreseeable;  and (4) the person claiming reliance is injured as a result of reliance on the promise. *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284–285, 619 N.E.2d 1035, 1037;   Restatement of the Law 2d, Contracts (1973), Section 90.   To avoid the employment-at-will doctrine because of the employer's oral promises, the test is "whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers v. Dispatch Printing Co., supra,* at paragraph three of the syllabus.

We have already discussed the nature of the evidence concerning W.A. Hill's alleged promises of continued employment, and how it consists entirely of Weiper's subjective understanding of statements which were in the nature of general praise.   The Ohio Supreme Court has rejected similar claims seeking artificially to inject a promise of job security in statements which simply do not amount to such under the employment-at-will doctrine. *Wing v. Anchor Media, Ltd. of Texas, supra.*   In *Wing,* the chief executive officer of a radio station promised the employee the opportunity to purchase equity in the station as soon as its new financing package was completed.   The court concluded, in reasoning that is directly applicable here, that praise for job performance and discussions of future career development without a demonstration of detrimental reliance upon *specific* promises of job security will not modify the employment-at-will doctrine. *Id.,* 59 Ohio St.3d at 110, 570 N.E.2d at 1098.   See, also, *Helmick v. Cincinnati*

*Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph three of the syllabus. The court in *Wing* further noted that although the employee "may have thought that the promise of a future opportunity to buy into the station meant job security," the statement did not amount to a promise of *continued employment,* but was, at best, a promise relating to career development. *Wing, supra,* at 110, 570 N.E.2d at 1098–1099. Simply put, "a promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the well-established doctrine of employment at will." *Id.* at 110–111, 570 N.E.2d at 1099. See, also, *Clipson v. Schlessman* (1993), 89 Ohio App.3d 230, 624 N.E.2d 220 (compliments by superiors on job performance and supervisor's statement that the employee "would never have to worry about his job" insufficient to establish promissory estoppel); *Healey, supra,* 85 Ohio App.3d 281, 619 N.E.2d 1035 (employer's statement that the employee would be first to work for the company for fifty years insufficient to establish promissory estoppel).

Absent evidence of specific promises of continued employment, Weiper's subjective understanding was insufficient as a matter of law to create an inference of continued employment upon which to assert the promissory estoppel exception to the employment-at-will doctrine. Additionally, there is nothing in the record to indicate that Weiper refrained from seeking other employment or that he relied on Hill's statements to his detriment.

■ With respect to Weiper's promissory estoppel claim for postemployment commissions, we have already discussed the nature of the evidence with respect to "promises" made to him. As we have noted, Weiper's evidence does not consist of clear, unambiguous promises by the company to pay these commissions; rather, his claim is bottomed upon his subjective understanding of his entitlement to these commissions, as well as the lack of any express language limiting payment of the commissions to his period of employment. As we have further noted, Weiper's attempts to get W.A. Hill to agree in writing that he was due post-employment commissions were thoroughly rebuffed. Weiper argues, nonetheless, that one could have reasonably found that he was entitled to have relied upon "representations regarding the unconditional nature of the commissions owed to him." We disagree that Weiper has presented evidence of representations sufficient to justify detrimental reliance, and therefore affirm the trial court's grant of summary judgment on this issue as well.

### 3. Unjust Enrichment

■ Unjust enrichment is an equitable doctrine in which the law implies a promise to pay the reasonable value of services rendered where one confers a benefit upon another without receiving just compensation for those services.

*Aultman Hosp. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920, 924; *Norton v. Galion* (1989), 60 Ohio App.3d 109, 110, 573 N.E.2d 1208, 1209. A party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment, *Ryan v. Rival Mfg. Co.* (Dec. 16, 1981), Hamilton App. No. C–810032, unreported, 1981 WL 10160, since, absent evidence of fraud, illegality, or bad faith, compensation is governed by the parties' contract. *Ullmann v. May* (1947), 147 Ohio St. 468, 34 O.O. 384, 72 N.E.2d 63.

■■■ Weiper asserts that there is evidence upon which the trier of fact could have reasonably found that, even absent an implied contract for postemployment commissions, W.A. Hill was unjustly enriched by not paying them to him. We have already dealt at length with Weiper's failure to establish that he was entitled to these commissions on a contractual basis. As part of that analysis, we noted that the only evidence of the custom of the employment agency industry is that such commissions are not paid. We have, finally, already rejected the argument that an at-will commissioned employee, absent an express agreement, is entitled to commissions following the termination of that employment. We find no basis, therefore, upon which one could reasonably conclude that Weiper was not fully compensated pursuant to his at-will employment or that it was manifestly unjust for W.A. Hill not to continue to pay Weiper commissions past the period of his employment. Thus we affirm the trial court's grant of summary judgment on Weiper's claim of unjust enrichment.

### 4. The State Claim for Age Discrimination

■■■ The ultimate inquiry when a claim is brought under R.C. 4101.17 is the presence of evidence of age discrimination. Absent discernible direct evidence, a plaintiff establishes a prima facie case of age discrimination in violation of R.C. 4101.17 in an employment-discharge action by showing "(1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class." *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus (modifying and explaining paragraph one of the syllabus of *Barker v. Scovill, Inc.* [1983], 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807).

The Ohio Supreme Court stated that its test in *Barker* for a prima facie case of age discrimination claims is a "direct adaptation * * * approved and slightly modified" of the evidentiary standards and guidelines established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, a case involving discriminatory employment practices based on race. *Kohmescher, supra,* at 504, 575 N.E.2d at 441. In *Komescher* the court also observed that the prima facie standard of *McDonnell*

*Douglas* was not intended to be strictly applied, but rather to serve as an orderly, empirical method to evaluate the evidence. *Id.* at 504, 575 N.E.2d at 442. The court noted that the shifting burdens of proof established in *McDonnell Douglas* are " 'designed to assure that the "plaintiff [has] his day in court despite the unavailability of direct evidence." ' " *Id.* at 505, 575 N.E.2d at 442, quoting *Loeb v. Textron, Inc.* (C.A.1, 1979), 600 F.2d 1003, 1014, and citing further *Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523, 533.

In 1993, the United States Supreme Court refined the burden of proof for a discrimination case. In *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, the court held that a plaintiff-employee has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If a prima facie case is presented, the employer must articulate some legitimate, nondiscriminatory reason for the plaintiff's discharge. If the employer can articulate a nondiscriminatory reason, then the presumption of discrimination raised by the prima facie case is rebutted, and the plaintiff's burden is to prove that the employer's reason for discharge was false, and that discrimination was the real reason for the discharge. *Id.* at 507, 113 S.Ct. at 2747, 125 L.Ed.2d at 415–416.

██ Accordingly, because Ohio courts have seen fit to follow the federal model regarding proof of a prima facie case of discrimination, the burden has changed since *Kohmescher, supra,* so that it is now incumbent upon the employee to prove not only that the employer's reason for discharge was false, but that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks, supra,* at 510, 113 S.Ct. at 2749, 125 L.Ed.2d at 418–419.

██ No fact appears in the record of this case to suggest that the dispute between Weiper and W.A. Hill involved anything more than a dispute over postemployment commissions. Granted, discrimination can take subtle forms and may be skillfully disguised, but Weiper's accusation of age discrimination appears to be no more than his effort to obfuscate the real issue in the hope of avoiding summary judgment. To be sure, there is no hint that W.A. Hill discharged Weiper because of his age. The over-forty employee who replaced Weiper belonged to the same protected class as Weiper. See R.C. 4101.17(A). Mere hiring of a younger employee does not create an inference that the older employee's discharge was motivated by age discrimination. *Chappell v. GTE Products Corp.* (C.A.6, 1986), 803 F.2d 261, 267. Weiper's argument that his replacement, seven years his junior, was substantially younger, thereby giving rise to an inference of age discrimination, is both unsupported by the law and unsubstantiated by the record. Hence we affirm the trial court's grant of summary judgment on this issue.

264

## B. Statute of Frauds

The trial court also held that the agreement for commissions proposed by Weiper violated the Statute of Frauds because it could not be performed within a year. R.C. 1335.05 provides:

"No action shall be brought * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized. * * *"

A promise unlikely to be performed within a year which is, in fact, not performed within a year, is still not within the Statute of Frauds if at the time of making there is a possibility that it can be entirely performed as the parties intended within a year. *Bryan v. Looker* (1994), 94 Ohio App.3d 228, 234, 640 N.E.2d 590, 594; *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 382, 620 N.E.2d 996, 1007; 3 Jaeger, Williston on Contracts (3 Ed.1960) 576–578, Section 495. Courts have construed this principle liberally to render contracts enforceable. Restatement of the Law 2d, Contracts, Section 130, Comment *a*.

Weiper correctly contends that if he died shortly after entering into the agreement, W.A. Hill's promise to pay post-employment commissions to his estate was capable of being performed within a year. A promise to continue to perform until an implied contingency occurs, such as the death of either party or the termination of an employment at will, is not within the Statute of Frauds. See *Nonamaker v. Amos* (1905), 73 Ohio St. 163, 173–174, 76 N.E. 949, 951–952. In *Nonamaker*, the parties' oral agreement reducing the percentage of royalties from drilling payable to the lessor under a written oil lease which was terminable at the will of either party was held not to be within the Statute of Frauds.

W.A. Hill argues that, notwithstanding Weiper's susceptibility to being terminated at any time, any agreement for payment of post-employment commissions, as alleged by Weiper, is inherently not capable of being performed within a year since these commissions depend upon future acts of third-party clients which necessarily extend for an indefinite time in the future. This is the same position taken by the Tenth District in *Sibbring v. Columbus Planning Agency, Inc.* (Feb. 18, 1982), Franklin App. No. 81AP–26, unreported, 1982 WL 3981. *Sibbring* involved an oral agreement in which payment of postemployment commissions was to be for an unlimited period—in other words, for as long as the accounts remained active. However, because of the parties' right in the case *sub judice* to terminate the agreement at any time under the employment-at-will doctrine, we do not find *Sibbring* controlling.

We hold, therefore, that the trial court incorrectly concluded that Weiper's proposed employment contract was within the Statute of Frauds. The trial court's error, however, is not prejudicial in light of our holding, in response to the first assignment of error, that the parties never came to any meeting of the minds on the terms sought by Weiper. The second assignment of error is, accordingly, not well taken.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., and MARIANNA BROWN BETTMAN, J., concur.