JOURNAL ENTRY AND OPINION
The City of Cleveland appeals from a decision of the common pleas court granting summary judgment to BP Exploration Oil, Inc., f/k/a The Sohio Oil Company (hereafter BP), in connection with the City's claim against BP for breach of contract, unjust enrichment, and conversion. On appeal, the City asserts that the court erred as a matter of law because it showed that it suffered damages from BP's conduct and because a genuine issue of material fact exists regarding the amount of damages. Upon careful review of the record and the applicable law, we reject these contentions and affirm the judgment of the trial court.
The facts of this case reveal that on December 20, 1988, BP's predecessor, The Sohio Oil Company, leased 33,380 square feet of space, including buildings and structures, from the City of Cleveland for the purpose of operating a retail automotive repair facility at Cleveland Hopkins International Airport.
The instant dispute stems from Article IX of the lease, which restricts parking on the leased premises and provides:
ARTICLE IX. PROHIBITED PARKING.
 No vehicle parking in excess of overnight parking shall be provided by Lessee at the premises. Lessee shall not advertise directly or indirectly vehicle parking on the premises.
 In the event Lessee's customers require extended parking of 24 hours or more after repair work is finished, Lessee will move said customer's vehicle to regular public airport parking facilities. (Emphasis added.)
Pursuant to the lease, from mid 1989 to May 1999, BP operated a Procare automotive service facility offering repair, tune-ups, oil changes, detailing, and car washing for its customers.
Sometime during 1999, the City discovered that during the term of the lease, BP had been offering parking service to its customers in connection with its auto service. In particular, BP offered a valet service to its auto service customers: a BP employee would drive the customer from the airport Procare facility to the airport terminal for departure and would then drive the car to the terminal to pick up the customer upon arrival. The valet service initially came with two days of free parking, but BP eventually eliminated the two days of free parking and began to charge its customers for parking at the facility.
On June 29, 1999, the City filed a complaint against BP for breach of Article IX of the lease, unjust enrichment, and conversion. The City alleged that BP received substantial parking revenue from its customers, asserting that between 1997 and 1998, BP generated $211,000 in parking fees; and further that, because the City operates the short-term and long-term parking facilities at the airport, BP deprived the City of $1,000,000 in lost parking revenue during the term of the lease.
BP moved for summary judgment on the ground that even if BP had violated the parking provision of the lease, the City could not establish that it suffered any damages from BP's alleged breach, pointing to the evidence of the availability of several non-City-owned parking facilities near the airport. BP asserted that the City's claim for unjust enrichment and conversion also failed as a matter of law.
The City moved for partial summary judgment on the issue of liability contending that it had established the existence of damages resulting from BP's breach of the lease, but that the amount of damages remained to be decided by a jury.
The trial court denied the City's motion for partial summary judgment and further granted BP's motion for summary judgment stating: Defendant BP Exploration Oil, Inc.
 Motion for Summary Judgment filed 4-21-00 is granted. On its claim of breach of contract plaintiff has failed to establish existence of damages to a reasonable degree of certainty.
 The language of the lease which requires vehicles to be moved to regular airport parking facilities is not restricted to city-owned lots. The plaintiff's claim of unjust enrichment fails because defendant did not confer a benefit on the City [sic][1] and the City cannot establish a loss. The City's claim on conversion fails because the monies are not specifically identifiable.
The City now appeals from this judgment raising two assignments of error for our review. They state:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING THE CITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT BECAUSE THE CITY DEMONSTRATED THAT IT HAD BEEN DAMAGED WHEN BP BREACHED ITS LEASE WITH THE CITY BY CHARGING CUSTOMERS FOR PARKING AT BP'S AIRPORT PROCARE FACILITY AND/OR ALLOWING CUSTOMERS TO LEAVE THEIR CARS ON THE PREMISES FOR REASONS OTHER THAN AUTOMOTIVE REPAIRS.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING BP'S MOTION FOR SUMMARY JUDGMENT.
We consider separately the three causes of action presented by the City.
 I. Breach of Contract
The City asserts that Article IX of the lease prohibited BP from providing parking to its customers and further required BP to move customer vehicles upon completion of repair work. In its motion for summary judgment, the City relied upon the 15,960 invoices produced by BP, which indicate that 45% of the services performed at the BP facility included no repair work, but rather related solely to parking, detailing, and valet service; additionally, 23% of the remaining invoices also contained charges for excess days of parking. The City therefore argues that the trial court should have granted its motion for partial summary judgment because no genuine issue of material fact exists regarding BP's breach of the lease and the existence of damages, contending that the only issue to be submitted to a jury concerned the amount of damages.
The City also contends that the trial court erred in granting BP's motion for summary judgment because BP failed to present any evidence that established the absence of damages suffered by the City justifying summary judgment in BP's favor. And, the City argues, according to its analysis, BP realized $1,135,000 in unauthorized parking revenue and the City lost parking revenue in excess of $1,374,000 due to BP's failure to remove customer vehicles from its premises following completion of repair work. The City therefore claims that because a genuine issue of material fact exists regarding the amount of damages suffered by the City, the trial court erred in granting summary judgment in favor of BP. BP, on the other hand, asserts that the trial court ruled correctly because it contends that the City failed to establish its breach of contract claim under the contractual provisions set forth in Article IX of the lease.
Regarding the language set forth in Article IX stating, [n]o vehicle parking in excess of overnight parking shall be provided by Lessee at the premises, BP asserts that even if it had breached that provision, the City failed to present evidence to prove damages because several other parking facilities not owned by the City could have been used to park vehicles, including Park N Fly, Park Air Express, Park Place, or Thrifty. In addition, travelers had the option of utilizing public transportation, taking a taxi, or obtaining rides from relatives or friends as alternatives to parking their vehicles at the airport.
Regarding the clause in Article IX which states [i]n the event Lessee's customers require extended parking of 24 hours or more after repair work is finished, Lessee will move said customer's vehicle to regular public airport parking facilities, BP asserts that the City failed to present evidence either that it breached this provision or that the City suffered damages. In particular, BP argues that the plain language of the provision obligates BP to move a vehicle only when the vehicle requires parking in excess of 24 hours upon completion of repairs. BP points out that it produced evidence to establish its practice of scheduling and finishing repair work within 24 hours of the customer's return. Thus, BP contends that under normal circumstances, it would not be required to move vehicles, and therefore argues that the City failed to present evidence to prove that BP violated this provision of the lease.
Furthermore, BP contends that it was only obligated to move vehicles to regular public airport parking facilities, and not City-owned parking facilities. BP asserts therefore that the City failed to present evidence to establish damages resulting from its alleged failure to move vehicles from its premises upon completion of repair work.
The issue for our consideration then concerns whether the trial court properly granted summary judgment to BP on this claim.
An appellate court will review de novo the pleadings and evidentiary material submitted to the trial court and apply the same standard to determine whether the materials submitted establish a genuine issue of material fact. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 572 N.E.2d 198.
Pursuant to Civ.R. 56, summary judgment is proper when:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.
Furthermore, the court in Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264, stated:
 * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence * * * which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
To successfully pursue a breach of contract claim, a plaintiff must demonstrate the existence of a contract, performance by the plaintiff, breach by the defendant, and damages or loss to the plaintiff. See Doner v. Snapp (1994), 98 Ohio App.3d 597, 601, 649 N.E.2d 42, 44, where the court stated:
 * * * [S]ince damages are an essential element [of a breach of contract action], if the appellants were to survive summary judgment on the issue of damages, they must have presented evidence establishing a genuine issue of material fact on that issue.
See, also, Fiorella v. Ashland Oil, Inc. (1993), 92 Ohio App.3d 411,414, 635 N.E.2d 1306, 1306.
The City relies on Doner for the proposition that a party must only demonstrate the existence of damages to survive summary judgment. Doner, however, does not bifurcate the issue of damages into the existence and amount of damages for summary judgment purposes. Rather, Doner holds that a plaintiff in a breach of contract action must present evidence to show the existence of a genuine issue of material fact on the issue of damages to defeat a motion for summary judgment.
In Combs Trucking, Inc. v. Internatl. Harvester Co. (1984),12 Ohio St.3d 241, 466 N.E.2d 883, the court, in paragraph two of its syllabus, established a tripartite test for recovery of lost profits arising from a breach of contract:
 Lost profits may be recovered by the plaintiff in a breach of contract action: if
 (1) profits were within the contemplation of the parties at the time the contract was made,
 (2)the loss of profits is the probable result of the breach of the contract, and
 (3) the profits are not remote and speculative and may be shown with reasonable certainty. (Emphasis added.)
See, also, the syllabus in AGF, Inc. v. Great Lakes Heat Treating Co. (1990), 51 Ohio St.3d 177, 555 N.E.2d 634.
Furthermore, in Gahanna v. Eastgate Properties, Inc. (1988),36 Ohio St.3d 65, 521 N.E.2d 814, the court elaborated on the third prong of the tripartite test and clarified what must be proven with reasonable certainty in order to satisfy this prong of the test. The court stated:
 [T]he third prong is but a single hurdle. We hold that in order for a plaintiff to recover lost profits in a breach of contract action the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty. (Emphasis added.)
Thus, in order to raise a genuine issue of material fact on the issue of damages and survive summary judgment, the City must set forth specific facts to show that it can establish, with reasonable certainty, the existence and amount of lost parking revenue due to the actions of BP.
Here, the City alleges that BP breached two provisions in Article IX of the lease, embodied in the first and third sentence of the section.
A. Contractual Provision Prohibiting Parking Regarding the provision in Article IX prohibiting BP from providing parking to its customers in excess of overnight parking, the record demonstrates that BP provided parking in excess of overnight parking and therefore demonstrates BP's breach of that provision.
After applying the Combs test to this breach, therefore, we have concluded that parking revenue from BP's auto repair customers was within the contemplation of the parties and that some potential loss of parking revenue would be the probable result of BP's breach of contract; however, in our view, the loss of parking revenue or profits is too remote and too speculative to be proven with reasonable certainty.
This is because the BP invoices relied upon by the City showed only that BP provided and charged its customers for parking. The record before us, however, contains evidence of several other parking facilities which customers could have patronized instead of parking at BP. Furthermore, it is also conceivable that, without the convenience of BP's valet parking service or its detail service in connection with parking, some potential BP customers may have utilized other means of transportation to the airport instead of patronizing any airport parking facilities. Thus, it is impossible to ascertain with reasonable certainty, in accordance with Combs, how much of BP's revenue is a corresponding loss to the City.
B. Contractual Provision Requiring BP to Move Customer Vehicles
We turn next to the other provision in Article IX which obligated BP to move customer vehicles to regular public airport parking facilities when such vehicles required parking after completion of work.
Although the City pointed to the testimony of a BP assistant manager who stated that BP would typically start service on the cars as early as it could, no evidence in the record establishes when repairs would have been completed; therefore the evidence does not demonstrate how many vehicles should have been moved as required by this contractual clause.
Moreover, the phrase regular public airport parking facilities means any airport parking facilities open to the public — it does not, as the City asserts, refer only to publicly-owned or City-operated airport parking facilities. In fact, in response to a BP interrogatory, the City itself listed four public airport parking facilities not owned or operated by the City. Moreover, any ambiguities regarding this phrase would be construed against the party who prepared the lease. As stated by the Ohio Supreme Court:
 A fundamental and frequently applied general rule of construction is that if there is doubt or ambiguity in the language of a contract the document is to be construed strictly against the party who prepared it or selected its language and in favor of the party who took no part in its preparation or in the selection of its language. He who speaks should speak plainly or the other party may explain to his own advantage. McKay Machine Co. v. Rodman (1967), 11 Ohio St.2d 77; 18 O. Jur 3d Section 149.
Here, the record indicates that the authorization to enter into a lease with BP was codified in Cleveland City Ordinance No. 1554-88: CCO No. 1554-88 states that the lease shall be prepared by the Director of Law and shall contain such additional provisions as she deems necessary to benefit and protect the public interest. CCO 1554-88. Therefore, any doubt regarding the meaning of the phrase regular public airport parking facilities should be construed against the City. If it had been the City's intention to benefit the public interest, it would have been incumbent upon director of law to achieve its intent by stating, for example, City-owned airport parking facilities.
Thus, the City failed to present evidence to establish how many vehicles which had parked at the BP lot during the term of the lease should or would have been moved to the City-owned parking facility. Applying the Combs test to BP's alleged breach of this provision, therefore, we conclude that without evidence establishing certitude of the extent of BP's breach, the City's claim for lost parking revenue arising from this breach is too remote and too speculative to be proven with reasonable certainty.
Accordingly, the City failed to carry its burden of presenting evidence to establish a genuine issue of material fact regarding damages resulting from BP's breach. Therefore, the trial court properly granted summary judgment to BP and denied the City's motion for partial summary judgment on the issue of liability.
 II. Unjust Enrichment
The City also asserts that the trial court erred in granting BP's motion for summary judgment because a genuine issue of material fact exists regarding the benefit conferred by the City upon BP stemming from BP's unauthorized use of its property.
BP, on the other hand, urges that the City cannot recover for unjust enrichment because a contract exists governing the matters on which the City bases its claim for unjust enrichment. Further, even if the City properly asserted a cause of action for unjust enrichment, BP argues that the City failed to satisfy an essential element, viz, the requirement that a plaintiff had conferred a benefit on a defendant: BP argues that third parties, namely its customers, conferred the benefit of parking revenues, not the City of Cleveland. Accordingly, BP contends that the claim for unjust enrichment is not well taken.
A party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment, absent evidence of fraud, illegality, or bad faith, since compensation is governed by the contract. Weiper v. W.A. Hill Assocs. (1995), 104 Ohio App.3d 250, 262, 661 N.E.2d 796,804. See, also, Hughes v. Oberholtzer (1954), 162 Ohio St. 330,123 N.E.2d 393 (it is generally agreed that there cannot be an express agreement and an implied contract for the same thing existing at the same time.)
Bad faith refers to the breach of good faith that is implied in every contract. See Ed Schory Sons, Inc. v. Soc. Natl. Bank (1996),75 Ohio St.3d 433, 662 N.E.2d 1074. In Metropolitan Life Ins. Co. v. Triskett Ill., Inc. (1994), 97 Ohio App.3d 228, 646 N.E.2d 528, the court summarized the standard of good faith:
 `Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of [a contract's] drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principles of good faith * * * fill the gap. (Emphasis added.)
Furthermore, to recover under a claim of unjust enrichment, a plaintiff must show that the plaintiff has conferred a benefit on a defendant; that the defendant is aware of the benefit; and that the defendant's retention of the benefit would be unjust. Hambleton v. R.G. Barry Corp.,12 Ohio St.3d 179, 465 N.E.2d 1298.
Here, we recognize that a contract exists which governs the matter of parking upon which the City's unjust enrichment claim is based. Section IX of the lease specifically addressees the issue of parking on the premises BP leased from the City it prohibits parking in excess of overnight parking; forbids advertising for parking; and requires BP to move customer vehicles to regular public parking facilities when the vehicles require parking in excess of 24 hours upon completion of repairs. Thus, in order to maintain an unjust enrichment claim, the City must show either fraud, illegality, or bad faith. The City alleges that the affirmative steps taken by BP to circumvent the parking restrictions in the lease constitute bad faith, thus allowing the City to make the alternative claim of unjust enrichment. Applying the standard of bad faith provided in Metropolitan Life, however, we note that the restrictions on parking were not only contemplated but in fact expressly provided for in the lease. Therefore, we conclude that the bad faith exception is not applicable here.
In the absence of fraud, illegality, or bad faith in this case, the City cannot prevail upon its unjust enrichment claim, because the subject matter of the instant dispute, i.e., parking on the leased premises, is governed by a valid contract, in Article IX of the lease. Weiper, supra.
Moreover, even if an unjust enrichment claim could be maintained, we conclude that the City could not satisfy, as a matter of law, the essential element regarding conferring a benefit on a defendant by a plaintiff because the benefit of parking revenues * * * wrongfully obtained by BP, sought in the City's complaint, had been conferred on BP by its customers.
 III. Conversion
Finally, the City asserts that the trial court erred in denying summary judgment to the City because a genuine issue of material fact exists regarding BP's conversion of the leased property for private unauthorized use. BP argues that an action for conversion will not lie in connection with real property.
It is well-established that a conversion claim can only be asserted with respect to personal property and not with respect to real property. Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 673 N.E.2d 628; Ohio Tel Equipment Sales, Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91, 93,493 N.E.2d 289, 292. Accordingly, we conclude that the City cannot maintain a conversion claim stemming from BP's unauthorized use of City property for parking purposes.
On the basis of the foregoing, we affirm the judgment of the trial court.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P.J., CONCURS. COLLEEN CONWAY COONEY, J. CONCURS. (SEE ATTACHED CONCURRING OPINION).
[1] The City claims that the trial court, in stating defendant did not confer a benefit on the City, had applied a wrong legal standard because an unjust enrichment claim requires a plaintiff to show, among other things, that the plaintiff conferred a benefit on a defendant. This sentence thus should have read the City did not confer a benefit on BP. A fair reading of the entire judgment entry, however, shows the transposing of the correct noun phrases here to be an inadvertent error.