OPINION
Kevin L. Rodgers, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court granted a motion for summary judgment in favor of Custom Coach Corporation ("Custom Coach"), defendant-appellee. We affirm.
Custom Coach is a corporation based in Columbus, Ohio, that designs and sells modified furnished buses. Appellant was hired by Custom Coach as a sales representative in October 1991. He received a fixed salary, a company car, and commission for the sale of custom coaches. At some point in the fourth quarter of 1995, commission payments were distributed to salespeople at the time the buses were delivered to the client, rather than at the time the contract was signed. In June 1996, Custom Coach was purchased by Jerome Nunn.
On October 22, 1997, appellant quit his sales position with Custom Coach. At the time, appellant had four contracts in various stages of production, which involved four coaches for customers named Richards, Tachdjian, Sadler, and Collins. The four coaches were delivered after appellant resigned from Custom Coach. Upon leaving Custom Coach, appellant took a customer list.
On November 13, 1997, Nunn and appellant had a meeting at a restaurant. Appellant claimed that Nunn told him "that my outstanding commissions would be paid" in exchange for appellant returning the customer list. Nunn disagrees with appellant's assertions and claims that he instead told appellant "that we would pay him what we owed him, in those exact words." In a letter to Nunn from appellant dated November 16, 1997, appellant stated:
 In accordance with our conversation during lunch on Thursday, I have reviewed all documentation removed from Custom Coach and am returning all items which may be in violation of the Employee's Patent and Trade Secret Agreement I signed with Greyhound Corp. I can and will certify and attest that no copies of these documents were made or remain in my possession. The return of these materials satisfies all claims and requests made by Custom Coach which are known to me.
 It is now the responsibility of Custom Coach to pay me all currently due commissions * * *.
A letter to appellant from Joe Green, a controller at Custom Coach, dated January 22, 1998, stated that, enclosed "you will find your final pay settlement" from Custom Coach. The letter also stated:
 In regard to the issue of commissions due from modification jobs in process at the time of your departure, our stance is this. Custom Coach Corporation does not issue commissions to employees not on payroll at the time of delivery. As to the issue of shell commissions due for modification units, that portion of the commission calculation was terminated as of December 31, 1996. No employee of Custom Coach was paid shell commission of $750.00 each for the year of 1997.
Nunn stated in his deposition that he made the decision not to pay appellant the commissions for the Tachdjian, Richards, Collins, and Sadler coaches because appellant "hadn't finished his job. Commissions are paid when the coach is delivered, paid for and problems are out of the way."
On March 20, 1998, appellant filed a complaint against Custom Coach alleging that it "breached its contractual obligations to [appellant] by refusing to pay the commissions which are due and owing to him." Appellant also alleged that Custom Coach was "unjustly enriched as a consequence of its refusal to pay [appellant] the commissions which he is entitled to be paid." Appellant further alleged that Custom Coach did not pay him the commissions "[w]ith the intent to defraud."
On December 30, 1998, Custom Coach filed a motion for summary judgment arguing that appellant could not prove his claims of breach of contract, unjust enrichment, and fraudulent misrepresentation. The trial court granted Custom Coach's motion on September 10, 1999, holding that: (1) there were no genuine issues of material fact concerning an agreement for future commissions; (2) appellant had failed to show that Custom Coach "retained a benefit or that he has superior equity; and (3) appellant had not submitted sufficient evidence to show that there was a false representation concerning a fact. Appellant appeals this decision and presents the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED IN THIS CASE.
 SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING WHETHER THERE WAS AN EXPRESS CONTRACT REGARDING FUTURE COMMISSIONS FOLLOWING THE TERMINATION OF EMPLOYMENT.
 THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING WHETHER THERE WAS A MEETING OF THE MINDS CONSTITUTING THE BASIS OF AN ENFORCEABLE CONTRACT FOR THE PAYMENT OF FUTURE COMMISSIONS FOLLOWING TERMINATION OF EMPLOYMENT.
 FOURTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DETERMINED REGARDING APPELLANT'S EFFORTS TO COMPLETE THE SUBJECT CONTRACTS ON THE ISSUE OF WHETHER THE APPELLANT WAS ENTITLED TO THE PAYMENT OF POST-TERMINATION COMMISSIONS.
FIFTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING THE INDUSTRY'S CUSTOMS ON THE ISSUE OF WHETHER THE APPELLANT WAS ENTITLED TO THE PAYMENT OF POST-TERMINATION COMMISSIONS.
 SIXTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE ARE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING WHETHER THERE WERE NO COMMISSIONS TO BE PAID FOR SALES OF MCI CONVERSION SHELLS.
 SEVENTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMANNING TO BE DECIDED REGARDING WHETHER APPELLEE WAS INJUSTLY [sic] ENRICHED BY NOT PAYING COMMISSIONS ON SALES INITIATED BY APPELLANT THAT WERE COMPLETED AFTER HIS RESIGNATION.
 EIGHTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING WHETHER APPELLEE RETAINED A BENEFIT FROM APPELLANT'S SALES WITHOUT COMPENSATION TO APPELLANT, THEREBY UNJUSTLY ENRICHING APPELLEE.
 NINTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING WHETHER APPELLANT HAD SUPERIOR EQUITY TO THE BENEFIT SO THAT IT WOULD BE UNCONSCIONABLE FOR THE APPELLEE TO RETAIN THE BENEFIT, THEREBY UNJUSTLY ENRICHING THE APPELLANT.
 TENTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING WHETHER APPELLEE FRAUDULENTLY MISREPRESENTED TO APPELLANT THAT HE WOULD BE PAID ALL OF HIS OUTSTANDING COMMISSIONS FOLLOWING HIS RESIGNATION.
 ELEVENTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AS THERE WERE MATERIAL ISSUES OF FACT REMAINING TO BE DECIDED REGARDING WHETHER "OUTSTANDING COMMISSIONS" INCLUDED THE POST-TERMINATION COMMISSIONS CLAIMED BY THE APPELLANT IN THIS CASE.
Appellant argues in his second, third, and fifth assignments of error that the trial court erred in granting Custom Coach's motion for summary judgment because material issues of fact remained to be decided. Appellant contends that during their meeting on November 13, 1997, he and Nunn entered into a valid enforceable oral contract concerning the payment of commissions. Appellant argues that he performed his obligations under the oral contract because he "solicited and obtained contracts for the sale of coaches * * * [and] he returned the customer list to Nunn." Appellant claims that since he fulfilled his obligations, Custom Coach should be required to pay him the commissions for the Tachdjian, Richards, Collins, and Sadler coaches.
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Gunsorek v. Pingue (Dec. 2, 1999), Franklin App. No. 99AP-62, unreported, discretionary appeal not allowed (2000),88 Ohio St.3d 1478.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. AppliedCos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion."Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. TheBuschman Co. (1998), 127 Ohio App.3d 561, 566.
"Absent a contract for future commissions, an employee is not entitled to post-employment commissions on previously generated business." Internatl. Total Services, Inc. v. Glubiak
(Feb. 12, 1998), Cuyahoga App. No. 71927, unreported, followingWeiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 259. "Simply because a commissioned employee through his or her efforts makes a company more profitable does not entitle that person to post-employment commissions. Such a result would be tantamount to giving the employee a perpetual equitable share of that company's earnings." Weiper, at 259. However, courts will consider both the employee's efforts and industry custom. Id.
In the present case, in order to show that he is entitled to post-employment commissions on previously generated business, appellant attempts to show that he had an oral agreement with Nunn concerning the payment of commissions. Appellant claims that summary judgment was inappropriate because a question of fact exists concerning whether an agreement was reached with Nunn. Nunn denies that he entered into an oral agreement with appellant concerning the payment of commissions for the sale of the four units.
"The elements of a contract are offer and acceptance, supported with valid consideration." Gruenspan v. Seitz (1997),124 Ohio App.3d 197, 211. "Consideration may consist either in a detriment to the promisee or a benefit to the promisor." Nilavarv. Osborn (1998), 127 Ohio App.3d 1, 15. Gratuitous promises are not enforceable as contracts because there is no consideration.Carlisle v. T R Excavating, Inc. (1997), 123 Ohio App.3d 277,283. Because the present case involves a granting of summary judgment, we will review the terms of the alleged oral agreement based upon what appellant claims are the contract terms and then determine whether there was sufficient consideration to form a contract.
Appellant claims that he was entitled to be paid the commissions based upon the fact that "he solicited and obtained contracts for the sale of coaches." However, the record shows that these events occurred while appellant was employed by Custom Coach, which was also before the November 13, 1997 meeting. Therefore, appellant cannot claim that there was sufficient consideration on his part to form a contract because "past consideration cannot be a bargained-for benefit or detriment, since it has already occurred or accured." Carlisle, at 285.
The only other promise that appellant claims that he made as part of the oral contract with Nunn was appellant's promise to return the customer list to Nunn. However, appellant stated in his letter to Nunn dated November 16, 1997, that he was "returning all items which may be in violation of the Employee's Patent and Trade Secret Agreement I signed with Greyhound Corp." Appellant also stated the following in his deposition:
 Q. When you left Custom Coach, did you take a customer list with you?
A. I did.
 Q. And what was your reason for taking the customer list?
 A. My initial concern was that [Custom Coach] would not pay me outstanding commissions * * * [a]nd I had a mistaken impression that a customer list might be a negotiating point to get paid outstanding amounts.
Therefore, based upon this evidence, it appears that: (1) the customer list was already Custom Coach's property; (2) it was wrongful for appellant to take the list from Custom Coach; and (3) appellant was already obligated to return the customer list based upon a prior agreement. Therefore, appellant cannot show it was to his detriment to give Nunn the customer list because even without the oral agreement, appellant was already obligated to return the list to Custom Coach.
Accordingly, we find that appellant cannot claim that an enforceable contract existed between appellant and Nunn based upon the terms stated by appellant. Appellant cannot claim that Custom Coach breached a contract that is unenforceable because it lacked sufficient consideration. Appellant's second, third, and fifth assignments of error are overruled.
Appellant argues in his fourth assignment of error that the trial court erred in granting summary judgment because he presented evidence that "production is not the responsibility of the sales representatives, that these coaches were delayed in delivery through no fault of the Appellant, and that these delays meant that the coaches were delivered after the date of the Appellant's date of resignation." Appellant claims that this evidence shows that material issues of fact remained as to whether he was entitled to the payment of these commissions after he resigned from his employment with Custom Coach.
However, as we stated in our discussion of appellant's second and third assignments of error, "[a]bsent a contract for future commissions, an employee is not entitled to post-employment commissions on previously generated business." Internatl. TotalServices, Inc., supra. Evidence that appellant was not at fault for the delay in the delivery of the coaches does not show that a contract for future commissions existed between appellant and Custom Coach. Therefore, without sufficient evidence that a contract for future commissions existed, appellant cannot claim that he was entitled to post-employment commissions on previously generated business. Appellant's fourth assignment of error is overruled.
Appellant argues in his sixth assignment of error that he was entitled to payment of "shell commissions" of $750 each for the Tachdjian, Richards, Collins, and Sadler units. However, Custom Coach presented evidence that the practice of a paying a $750 shell commission was discontinued on December 31, 1996. Each of these four transactions occurred after December 31, 1996. Appellant does not dispute that the practice of paying $750 per shell was discontinued, but, instead, claims that he was never informed. We agree with the trial court's statement that the "fact that [appellant] was not aware that the MCI conversion shell incentive was eliminated or the fact that an old form containing a space for $750.00 MCI shell commissions was still being used by Custom Coach do not create genuine issues of material fact to be preserved for trial." Appellant's sixth assignment of error is overruled.
Appellant argues in his seventh, eighth, and ninth assignments of error that material issues remained concerning whether Custom Coach was unjustly enriched by not paying commissions on sales initiated by appellant that were completed after he resigned. "Unjust enrichment occurs where one party retains money or benefits that belong to another." York v. Howard
(Mar. 20, 2000), Warren App. No. CA99-06-063, unreported. In order to prevail upon an unjust enrichment theory, the plaintiff must establish three elements: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under the circumstances where it would be unjust to do so without payment. Dixon v. Smith (1997), 119 Ohio App.3d 308, 317-318.
In its motion for summary judgment, Custom Coach presented evidence that even though appellant was not paid a commission for the four coaches, Custom Coach was not unjustly enriched because it paid commissions for three of the four coaches to other salespeople. Nunn stated in his affidavit that "[t]hree of the four coaches at issue resulted in a total net gross profit of $6901 instead of anticipated gross profits of $308,260. After commission payments, there was a net loss to the company." Nunn stated in his deposition that he made the decision that two salespeople, Elmers and Middaugh, should be paid the commissions on three of the four coaches because "they're still taking care of the customer, and the hours that required for that mess, they deserved a commission."
Regarding the burden of a party seeking summary judgment, the Ohio Supreme Court has stated:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.
* * *
However, if the moving party has satisfied its initial burden [that the nonmoving party cannot prove its case], the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
A review of Custom Coach's motion for summary judgment shows that Custom Coach presented sufficient evidence that it did not retain a benefit as a result of appellant's sales work. However, appellant did not dispute Custom Coach's assertion that it paid commissions for three of the four units and that Custom Coach had a net loss on the sales. Therefore, since appellant did not meet his reciprocal burden to set forth specific facts showing that there is a genuine issue for trial concerning whether Custom Coach retained a benefit through appellant's sales work, we find that the trial court did not err in finding that Custom Coach was entitled to judgment as a matter of law concerning appellant's unjust enrichment claim. Appellant's seventh, eighth, and ninth assignments of error are overruled.
Appellant argues in his tenth and eleventh assignments of error that genuine issues of material fact remained regarding whether Custom Coach fraudulently misrepresented to appellant that he would be paid all of his outstanding commissions following his resignation. We disagree.
In order to state a claim for fraud at common law, "a plaintiff must show (1) a material false representation (2) knowingly made (3) with the intent to induce reliance (4) reasonable reliance upon the misrepresentation by the plaintiff and (5) damages proximately caused by the reliance." Carter-JonesLumber Co. v. Denune (1999), 132 Ohio App.3d 430, 434. Additionally, a claim of fraud cannot be predicated upon promises or representations relating to future actions or conduct. Hancockv. Longo (Oct. 14, 1999), Franklin App. No. 98AP-1518, unreported. "Representations concerning what will occur in the future are considered to be predictions and not fraudulent misrepresentations."Assoc. for Responsible Development v. Fieldstone Ltd. Partnership
(Nov. 13, 1998), Montgomery App. No. 16994, unreported. The exception to this rule is when the person:
 * * * who makes his promise of future action, occurrence, or conduct, and who at the time he makes it, has no intention of keeping his promise. In such case, the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent. Tibbs v. National Homes Constr. Corp. (1977), 52 Ohio App.2d 281, 287. (Emphasis sic.)
In the present case, appellant alleges that Nunn deliberately misled him into believing that he would be paid his outstanding commissions. The only evidence that appellant presents to support his theory of fraud is Nunn's statement that his "outstanding commissions would be paid." When asked about this statement, appellant stated the following:
 Q. Mr. Nunn's statement to you was that you would be paid all outstanding commissions?
A. Correct.
Q. Did he define outstanding commissions?
A. He did not.
Q. What did you think he meant?
 A. I felt we were particularly talking about these four coaches previously mentioned.
Nunn states that his exact words to appellant during his meeting with him were that "we would pay him what we owed him."
A party attempting to prove fraud who is opposing a motion for summary judgment "may not rest upon mere allegations."Hancock, supra, quoting Becker v. Becker (Aug. 11, 1997), Clermont App. No. CA97-01-001, unreported. Appellant attempts to prove fraud by relying solely upon his interpretation of Nunn's statement without presenting any other evidence to help establish that Nunn had no intentions of keeping his promise at the time he made it. Additionally, a review of the record shows that Custom Coach paid appellant for outstanding commissions after the November 13, 1997 meeting because he was paid a commission check in the amount of $895.25 in August 1998. We agree with the trial court's statement that appellant "has failed to provide any evidence * * * that `outstanding commissions' included post-employment commissions. Thus, [appellant] has not shown that there has been a false representation concerning a fact." Accordingly, we find that the trial court did not err in finding that appellant failed to provide sufficient evidence to support his claim of fraud. Appellant's tenth and eleventh assignments of error are overruled.
Appellant generally argues in his first assignment of error that the trial court erred in granting Custom Coach's motion for summary judgment. However, appellant provides no issues for this court to review or any arguments with reasons supporting his assignment of error. See App.R. 16(A)(4) and (7). Additionally, we have reviewed and overruled appellant's other ten assignments of error, which contained his arguments concerning why the trial court erred in granting the motion for summary judgment. Therefore, we also overrule appellant's first assignment of error.
Accordingly, appellant's eleven assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
BOWMAN, P.J., and KLINE, J., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment under authority of Section 6(C), Article IV, Ohio Constitution.