JOURNAL ENTRY and OPINION
Appellants Samuel Lyons and Johnny Marks, Jr. appeal from the trial court's order granting summary judgment in favor of appellee Steven Howland on his claim for attorney fees, and dismissing their counterclaims of breach of contract, unjust enrichment/promissory estoppel, and legal malpractice. Despite Lyons and Marks' references to summary judgment in their assigned errors, the issues they address pertain only to their counterclaims which the trial court disposed of under Civ.R. 12(b)(6). Accordingly, we will address the trial court's dismissal of the counterclaims rather than the trial court's grant of summary judgment. Lyons and Marks assign the following as errors for our review.
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S BREACH OF CONTRACT CLAIM.
 II. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' PROMISSORY ESTOPPEL/UNJUST ENRICHMENT CLAIM.
 III. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANTS' MALPRACTICE COUNTERCLAIMS.
Appellee also presents the following assignment of error:
 I. THE TRIAL COURT ERRED WHEN IT ALLOWED DEFENDANTS-APPELLANTS TO FILE THEIR ANSWER AND COUNTERCLAIMS WITH [SIC] FIRST DETERMINING THAT THEY'RE [SIC] DELAY WAS THE RESULT OF EXCUSABLE NEGLECT.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
In 1996, Lyons and Marks filed a race discrimination complaint with the United States Equal Employment Opportunity Commission (EEOC) against their employer, Foseco, Inc. On December 3, 1997 the EEOC filed suit in United States District Court on behalf of Lyons and Marks.[1] Lyons and Marks, although not named parties, were the real parties in interest.
The EEOC assigned Lawrence Mays as its lead attorney. At the outset of proceedings, Lyons and Marks did not have private counsel; however, nine months after the EEOC filed suit, Mays recommended independent counsel for Lyons and Marks. Based upon Mays' recommendation, both Lyons and Marks chose Howland. On or about September 8, 1998, they entered separate attorney-client agreements with Howland whereby Howland would receive twenty-five percent of Lyons' settlement amount and twenty-four percent of Marks' settlement amount.
With Howland's assistance, Lyons and Marks reached tentative settlements with Foseco, Inc. in the U.S. District Court for the Northern District of Ohio. According to the settlements, Foseco, Inc. was to pay $200,000 to Lyons and $276,667 to Marks. Although Lyons and Marks acceded to the settlement, they later challenged its execution before the district court judge. In light of their opposition, the judge vacated the settlement and reset a trial date. Wary of long delays in reaching another settlement, Lyons and Marks entered another settlement agreement with Foseco under the same terms as the first settlement. Foseco, Inc. then delivered six checks to Howland: two checks totaling $76,667 payable to Marks; two checks totaling $200,000 co-payable to Marks and Howland, and two checks totaling $200,000 co-payable to Lyons and Howland. Howland distributed to Marks the checks totaling $76,667; however, both Lyons and Marks refused to endorse the co-payable checks, claiming his attorney fees were excessive.
On this basis, Lyons and Marks filed a complaint against Howland with the Cuyahoga County Bar Association. Thereafter, the parties entered separate settlement agreements whereby Lyons received $150,000 of his reward, Marks received $133,600 of his award, both Lyons and Marks remitted $22,500 of their rewards to Howland, and the remaining funds were deposited into an escrow account pending a final agreement or order.[2]
On August 24, 1999, Howland filed suit against Lyons and Marks in the Cuyahoga County Court of Common Pleas alleging they "failed and refused to pay [Howland] such amount as he is entitled under the fee agreement" and sought payment of the monies deposited into escrow. On November 12, 1999, Howland filed a motion for default judgment against both Lyons and Marks for failure to answer his complaint. On December 15, 2000, the trial court converted the default judgment hearing to a case management conference and granted Lyons and Marks leave to answer Howland's complaint instanter. Their filing, containing their answer, included four counterclaims: (1) Howland's fee agreement constituted unjust enrichment/promissory estoppel, (2) Howland committed legal malpractice by settling their claim without authority to do so, (3) Howland committed legal malpractice by publishing the terms of the settlement agreements in his complaint against Lyons and Marks, and (4) Howland breached the terms of their attorney-client contract when he published the terms of the settlement agreement in his complaint against Lyons and Marks. On February 7, 2000, Howland filed a motion to dismiss their first, second, and third counterclaims, and a motion for summary judgment on his complaint. On March 17, 2000, the trial court granted Howland's motions.
On May 4, 2001, sua sponte, we remanded this case to the trial court for lack of a final appealable order. Because Howland's motion to dismiss did not address Lyons and Marks' fourth counterclaim, the trial court's journal entry stating, "[Howland's] motion to dismiss counterclaims and for summary judgment, filed 2/7/00, is hereby granted," was not a final appealable order as to all issues before the trial court. On June 22, 2001, the trial court responded with a journal entry citing Civ.R. 54(B) and stating, "As to court's order of 3/17/00 * * *, no just cause for delay." This journal entry converted the trial court's March 17, 2000 order into a final order, but did not confer upon us jurisdiction regarding Lyons and Marks' fourth counterclaim. To avoid piecemeal litigation, we again returned this matter to the trial court on September 18, 2001 for resolution of the fourth counterclaim.On October 9, 2001, the trial court entered a final order dismissing the fourth counterclaim and creating a final appealable order as to all issues.
Lyons and Marks' third assigned error generally incorporates their argument contained within their first assigned error. We will first address their second assigned error, and then concurrently address their first and third assigned errors.
When reviewing a Civ.R. 12(B)(6) dismissal, we independently review the complaint to determine whether dismissal was properly granted.[3] A Civ.R. 12(B)(6) dismissal is proper only if, after accepting the plaintiff's allegations as true, we determine the plaintiff can not prove any set of facts entitling him to recovery.[4] We apply this standard of review to Lyons and Marks' assigned errors.
In their second assigned error, Lyons and Marks argue the trial court erred in dismissing their first counterclaim which raised the distinct concepts of unjust enrichment and promissory estoppel as they apply to attorney fees under their attorney-client agreement with Howland. We disagree.
Unjust enrichment is a concept within contract law that operates to prevent an injustice when one party retains the benefit of another party's efforts without paying fair compensation.[5] If an express contract exists concerning the services for which compensation is sought, the doctrine of unjust enrichment does not apply in the absence of fraud, bad faith, or illegality.[6] Absent at least one of these elements, imposition of hardship upon one party or advantage to the other does not relieve the parties from their agreement.[7]
The substance of Lyons and Marks' argument relating to unjust enrichment is that Howland misrepresented himself as a partner in the "areas largest black law firm" and "pressured" them into signing contingency fee agreements when hourly fee agreements were more appropriate. Because express contracts exist here, and Lyons and Marks' arguments do not raise questions of bad faith[8] or illegality, we are left to consider whether Howland fraudulently induced Lyons and Marks to enter the contracts.
In order to prove fraud in the inducement, Lyons and Marks must demonstrate Howland knowingly made a material misrepresentation with the intent of inducing reliance and that they did, in fact, rely on that misrepresentation to their detriment.[9]
A representation is material if it is essential to contract formation.[10] In other words, if the contract would not be formed but for the representation, then the representation is material.
Nothing in the record indicates that Lyons and Marks chose Howland for any reason other than they believed they required additional representation and Howland was recommended to them by Lawrence Mays, the EEOC attorney. Howland's misrepresentation is not material because the record does not support the position that Howland purported status as a partner in the "area's largest black law firm," was essential to contract formation.
Further, Lyons and Marks argue they were pressured into signing the contingency fee agreements; however, the facts establish the only pressure they were under was to find an additional attorney to represent their interests. The record is devoid of any pressure from Howland.
What Lyons and Marks are asking us to do is to look at this agreement and conclude that Howland's fee is excessive, and thus, to re-write the contracts. Under these circumstances, this, we cannot do.
Second, Lyons and Marks assert Howland is liable under a theory of promissory estoppel. The elements of promissory estoppel are (1) a clear, unambiguous promise; (2) reasonable and foreseeable reliance upon the promise by the person to whom the promise is made; and (3) resulting injury to the party who relied on the promise.[11] Promissory estoppel is a quasi-contractual concept where a court in equity "creates" a contract where none existed in order to prevent an injustice. Here, definite contracts exist between Howland and Lyons and Marks. We will not re-write these contracts simply because Lyons and Marks assert, after freely entering the contracts, that the terms are "unfair." Lyons and Marks knowingly entered binding contracts with Howland that specifically set forth Howland's compensation at twenty-five percent of Lyons' award and twenty-four percent of Marks' award.
Having determined that unjust enrichment and promissory estoppel do not lie, Lyons and Marks' second assigned error is without merit.
In their first and third assigned errors, Lyons and Marks assert the trial court erred in dismissing their counterclaims for legal malpractice, which was based upon two theories, and breach of their attorney-client contracts.
Lyons and Marks theorize that Howland committed legal malpractice first by misrepresenting their settlement positions to the federal judge and to the opposing counsel; and second by breaching his duty of representation to Lyons and Marks by attaching a copy of the settlement agreement.[12]
We disagree.
Lyons and Marks' first theory of legal malpractice fails. Upon hiring Howland as their attorney, Lyons and Marks endowed Howland with authority to enter settlement negotiations, but not to enter a settlement without having first gaining approval of his clients.[13] Here, Lyons and Marks complain that during authorized settlement negotiations, Howland indicated to the federal judge and to the opposing counsel that his clients may accept a settlement offer lower than they anticipated. Without entering into a binding agreement, Howland then presented the resultant settlement proposals to his clients. Howland did no more than negotiate for a settlement; he did not enter into a settlement without first consulting his clients as required by their agreements. These facts are not in dispute. Accordingly, we see no means by which Lyons and Marks can reasonably assert that Howland violated the terms of their attorney-client contracts.
Lyons and Marks also argue Howland breached their attorney-client contracts by publishing the terms of their settlement agreements with Foseco. Lyons and Marks' settlement agreements with Foseco contained confidentiality clauses which, if violated by Lyons and Marks, could result in forfeiture of their settlements. Lyons and Marks posit Howland breached his duty to represent the interests of his clients when he attached a copy of the settlement agreements to his August 24, 1999 complaint against Lyons and Marks.
To establish a prima facie case of legal malpractice based upon negligent representation, a plaintiff must demonstrate: (1) the attorney owed a duty to the plaintiff, (2) the attorney breached that duty, and (3) a causal connection exists between the conduct complained of and the resulting damage.[14]
Here, as Howland points-out, attaching the Foseca settlement agreements to his complaint has not caused any damage to Lyons or Marks. Neither Lyons nor Marks have forfeited any portion of their settlement agreements due to Howland's conduct. Therefore, Lyons and Marks' claim of legal malpractice fails to clear Vahila's third hurdle. Consequently, we need not engage in further analysis on this issue, and Lyons and Marks' first assigned error is without merit.
In his cross-assigned error, Howland argues that whether the court properly granted his Civ.R. 12(b)(6) motion to dismiss should never have come before us because the trial court erred in permitting Lyons and Marks to file their answer and counterclaims after the Civ.R. 12 (A)(1) time limit had expired. Athough Civ.R. 12(A)(1) provides that, generally, a defendant must answer within twenty-eight days after service of the summons and complaint, Civ.R. 6(B)(2) provides that "when by these rules * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]" The trial court's decision to permit a tardy filing will not be disturbed on appeal absent an abuse of discretion.[15]
In order for there to be an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias."[16]
When determining whether to permit a tardy filing, judges must consider all surrounding facts and circumstances, while remaining "mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds."[17] Previously, this court has held that a trial court does not necessarily abuse its discretion when it permits a tardy filing even if a party has not provided an explicit reason for delay unless the other party is prejudiced by the delay.[18]
Because the trial court properly dismissed Lyons and Marks' counterclaims and because the trial court's grant of summary judgment in favor of Howland on the initial claim for attorney fees is not before us, the trial court did not cause prejudice to Howland in permitting Lyons and Marks to answer his complaint. Accordingly, Howland's assigned error is moot.
Judgment affirmed.
It is ordered that appellee recover of appellants his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBEZZE, JR., J., and JAMES J. SWEENEY, J., CONCUR.
[1] Equal Employment Opportunity Commission v. Foseco, Inc., U.S. Dist. Ct., N.D. Ohio, Case No. 1:97CV3148.
[2] This distribution left escrow amounts of $27,500 from Lyons' award and $43,900 from Marks' award.
[3] Girts v. Raaf (May 4, 1995), 1995 Ohio App. LEXIS 1862, Cuyahoga App. No. 67774, unreported.
[4] Greeley v. Miami Valley Maintenance Contrs., Inc. (1990),49 Ohio St.3d 228, 230, 551 N.E.2d 981.
[5] Carter v. Warner Interior, Inc., 1997 Ohio App. LEXIS 4894 (November 6, 1997), Cuyahoga App. No. 71797 unreported, citing AultmanHosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,544 N.E.2d 920, Pawlus v. Bartrug (1996), 109 Ohio App.3d 796,673 N.E.2d 188, and Weiper v. W.A. Hill Assoc. (1995),104 Ohio St.3d 250, 661 N.E.2d 796.
[6] Carter, supra, citing Weiper, supra, and Ullmann v. May (1947),147 Ohio St. 468, 72 N.E.2d 63.
[7] Carter, supra, citing Ullman, supra.
[8] Bad faith is a legal concept that applies only after contract formation. See Carter, supra, citing Metro Life Ins. Co. v. TriskettIllinois, Inc. (1994), 97 Ohio App.3d 228, 646 N.E.2d 528, quoting Kham Nate's Shoes No. 2, Inc. v. First Bank of Whiting (C.A. 7, 1990),908 F.2d 1351.
[9] McManamon v. HR Mason Contrs., 2001 Ohio App. LEXIS 4068 (September 13, 2001), Cuyahoga App. No. 79014, unreported, citing Beerv. Griffith (1980), 61 Ohio St.2d 119, 399 N.E.2d 1227.
[10] See, Willis v. Avery Label Systems (1996), Ohio App. LEXIS 1057 (Mar. 21, 1996), Cuyahoga App. No. 68617, unreported; See, also, Gainesv. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 514 N.E.2d 709.
[11] Carter v. Warner Interior, Inc., 1997 Ohio App. LEXIS 4894 (November 6, 1997), Cuyahoga App. No. 71797 unreported, citing Weiper v.W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 260, 661 N.E.2d 796.
[12] As previously stated, we are resolving Lyons and Marks' first assigned error concurrently with their third assigned error as they both raise Howland's publication of the settlement agreement See infra. pgs. 6, 7.
[13] Both Lyons and Marks signed a representation agreement with Howland containing the following clause: "No settlement of any nature shall be made without the approval of the client, nor shall the client obtain any settlement without the complete knowledge of and discussion with the attorney."
[14] Vahila v. Hall (1997), 77 Ohio St.3d 421, 674, N.E.2d 1164;Krahn v. Kinney (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058.
[15] State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs. (1995),72 Ohio St.3d 464, 465, 650 N.E.2d 1343; Zimmerly v. Cleveland ClinicFound, 1998 Ohio App. LEXIS 3499 (July 30, 1998), Cuyahoga App. No. 73104, unreported.
[16] Nakoff v. Fairview General Hospital (1994), 75 Ohio St.3d 254,256, 662 N.E.2d 1, 3 citing State v. Jenkins (1984), 15 Ohio St.3d 164,222, 473 N.E.2d 264, 313.
[17] Lindenschmidt, supra at 466.
[18] Zimmerly and McGowan, supra.